IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **THE WORD SEED CHURCH**, an Illinois not-for-profit Corporation and **CIVIL LIBERTIES FOR URBAN BELIEVERS**, an unincorporated association,<br><br>            Plaintiffs,<br><br>   v.<br><br>**VILLAGE OF HAZEL CREST**, an Illinois municipal corporation,<br><br>            Defendant. | Case No. 20 C 7725<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

The Plaintiffs, The Word Seed Church and the Civil Liberties for Urban Believers, (collectively "Word Seed Church") have filed a six count Complaint (Dkt. No. 40) against the Village of Hazel Crest ("Hazel Crest") seeking a declaration that the zoning ordinance of the Village of Hazel Crest, and its implementation, violates the Religious Land Use & Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* (Counts I, III, IV, and V) (the "RLUIPA"), the Equal Protection Clause of the Fourteenth Amendment (Count II), and is unconstitutionally vague and grants Hazel Crest unreasonable discretion (Count VI). Word seed also seeks an injunction and damages. Hazel Crest responds contending that the RLUIPA does not

apply, and that its zoning ordinance does not violate the equal protection clause. The parties have cross moved for summary judgment. (Dkt. No. 53, Dkt. No. 59.)

## I. **FACTS**

The facts surrounding this controversy were extensively set forth in the Court's opinion issued earlier when it denied Word Seed's Motion for a Preliminary Injunction. *Word Seed Church, et al. v. Village of Hazel Crest*, 533 F. Supp. 3d 637, 642 (N.D. Ill. 2021). The Court will not reproduce all of those facts here. Suffice to say the Village is divided into the following zoning districts: 4 Residential (R-0, R-1, R-2, and R-3); a Special Planned Development District (SPD); Office, research, and compatible use district (M-OR); 2 business districts (B-1, B-2); and 1 limited manufacturing district (M-1). (Def.'s Resp. to Pl.'s Stmt. of Facts ("DSOF") ¶ 9, Dkt. No. 65.) Each district has special limitations such as permitted uses, lot size, minimum lot area, height restrictions and the like. (Village of Hazel Crest Zoning Ordinance at 16–29, Def. Stmt. of Facts, Ex. B, Dkt. No. 57-2.) In addition to the specified permitted uses in a district, certain districts allow for special uses, which are uses that are for purposes or activities, because of unique characteristics, cannot be classified as permitted uses. (*Id.* at 16, 18–19, 21–22, 29.) To obtain a special use, a property owner must submit an application to the Zoning Administrator who submits a

recommendation to the Zoning Commission, who in turn submits its recommendation to the Village Board for final approval. (*Id.* at 39.) Churches require a special use permit and are limited to Residential Districts. (DSOF ¶ 11.) To obtain approval of a special use in a district that does not provide for them in the zoning ordinance, a party must petition the Village to amend the zoning code. (Village of Hazel Crest Zoning Ordinance at 40.) A party may also seek to have the zoning the code amended to allow a new permitted use. (*Id.*) This is done by petitioning to the Commission and ultimately to the Village Board to amend the zoning ordinance by adding a permitted use. (*Id.*)

The undisputed evidence shows that Word Seed has not purchased any property within the corporate limits of Hazel Crest and has not petitioned for a special use. (Pl.'s Resp. to Def.'s Interrogs. at ¶ 13, Def. Stmt. of Facts, Ex. H, Dkt. No. 57-8; Washington Dep. 44: 7—10, Def. Stmt. of Facts, Ex. F, Dkt. No. 57-6.) It has however sought to obtain appropriate property in the neighboring villages of Homewood and Flossmoor. (Washington Dep. 22:5—8.) In Flossmoor, Word Seed obtained a signed contract to purchase property, petitioned and obtained a special use for a church, but because of a real estate tax problem, the deal fell through. (DSOF ¶¶ 18—21.) The evidence here however conclusively shows that Word Seed has not now or ever acquired any interest in any property in Hazel Crest, even though

the evidence showed that there are currently 15 properties in Hazel Crest that have special uses for church use. (Rule 26(a)(1) Disclosures at 6–7, Def. Stmt. of Facts, Ex. E, Dkt. No. 57-5.) Word Seed has made no effort to acquire or rent any one of them. (Washington Dep. 61:3–12.)

The evidence includes the testimony of Word Seed's expert witness, Mark Ridolphi ("Ridolphi"), an architect that specializes in church construction. He testified that, even though Word Seed currently had only a small congregation, he was told that it anticipated growing to at least 100 members so he counseled Word Seed that it should obtain a parcel of property of sufficient size to build a church to house a congregation of at least 120 members. (Ridolphi Dep. 16:18–21, 45:24–47:19, Pl.'s Mem., Ex. 9, Dkt. No. 60-11.) Because of the special use requirements for parking, area, and the like, there apparently is no parcel of property in any of the Residential Use Districts of such size in Hazel Crest. (*Id.* 52:23–53:9.) Ridolphi further testified that it is doubtful that in a mature community like Hazel Crest that the church could find a parcel of sufficient size in any of its Residential Districts. (*Id.* 30:22–32:13, 53:14–18.)

## II. THE POSITION OF THE PARTIES

Word Seed takes the position that denying a church the right to establish a church as a matter of right somewhere in the Hazel Crest

together with the imposition of the delay, uncertainty and expense involved in obtaining a special use, and Hazel Crest's unequal treatment of religious assemblies as opposed to favorable treatment extended to similar non-religious uses, all violate various provisions of RULIPA, and similarly violate the Equal Protection Clause of the Fourteenth Amendment. (Pl.'s Mem. at 3, Dkt. No. 60.)

Hazel Crest contends that Word Seed does not now and never has owned any property in Hazel Crest. (Def.'s Mem. at 1, Dkt. No. 54.) Therefore, it does not meet an essential requirement of any RLUIPA suit that a religious organization must have a property interest in a particular piece of property which is subject to discrimination. (*Id.* at 4—7.) The so-called unequal treatment argument fails because the examples cited by Word Seed such libraries, adult theaters, and community centers are not comparable to churches. (Def.'s Reply at 10—11. Dkt. No. 64.)

### III. LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id.*

When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Id*. at 380.

On cross-motions for summary judgment, "[t]he ordinary standards for summary judgment remain unchanged" and the Court construes "all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

## IV. DISCUSSION

### A. The RLUIPA Counts

Four of Word Seed's six counts are based on separate provisions of RLUIPA (Count I - Equal Terms provision, Count III - Unreasonable Limitation provision, Count IV - Total Exclusion provision, and Count V - Substantial Burden provision). However, RLUIPA coverage is limited to protecting religious entities that own property from the imposition or implementation of land use regulations that unfairly discriminate against such religious entities and their activities. *Taylor v. City of Gary*, 233 Fed. App'x 561. 562 (7th Cir. 2007). As stated by the Seventh Circuit, "[RLUIPA] prohibits land use regulations that place a substantial burden on religious practice."

*Id.* (citing 42 U.S.C. § 2000cc(a)(1)). The Seventh Circuit adds, "a land use regulation is defined as a regulation that restricts a claimant's ability to use land in which he holds a property interest." *Id.* (citing 42 U.S.C, § 2000cc-5(5); *Vision Church v. Village of Long Grove,* 468 F.3d 975, 998 (7th Cir. 2006)). In this case Word Seed does not and never has owned any property in Hazel Crest. It instead complains that the existence of the Hazel Crest zoning ordinance, which requires a special use for establishment of a church in a residential district, makes it too costly and difficult to purchase land without a guarantee as to its use, at the time of the purchase. However, the record is devoid of any evidence of the anticipated cost to obtain a special use permit. Word Seed of course understands the procedures for obtaining a special use because it complied with the similar special use regulations in the neighboring community of Flossmoor where it applied for and received a special use permit to establish a church there.

Word Seed argues that the Court has already ruled that it is entitled to the protection of RLUIPA when the Court ruled at the preliminary injunction stage that it had standing to seek a preliminary injunction. However, there is a clear difference between standing and merits (here the validity of the Hazel Crest zoning ordinance). While a party can have standing to contest a statute, standing alone does not entitle a litigant to a favorable decision

as to whether a zoning provision violates a particular statute such as RLUIPA. Since Word Seed does not now and has never had a property interest in any real estate located in Hazel Crest, RLIUPA does not apply, and Hazel Crest is entitled to summary judgment on each of the four RLUIPA counts.

### B. Fourteenth Amendment Equal Protection Claim

Word Seed's Count II seeks to raise an equal protection claim which faces similar difficulties to those it faced with the RLUIPA claims, *i.e.,* it does not and never has had any property located within Hazel Crest and has never applied for a special use. Thus, it is limited to a facial challenge to the Hazel Crest zoning ordinance. However, it cannot be seriously argued that a village cannot regulate the location of churches within its boundaries. There is no basis to argue that the adoption of a special use requirement to regulate the location of churches does not meet constitutional muster. *Vision Church*, 468 F.3d at 1000—1002. Moreover, there is no evidence in the record that any entity, church or otherwise, has been treated more favorably than Word Seed has been treated, because Word Seed has not been treated at all by Hazel Crest.

Word Seed next argues that that libraries, adult mini-motion picture theaters, and community centers are permitted uses in certain zoning districts, while churches are not. However, Word Seed's expert testified that libraries are not comparable uses to churches,

particularly on the issue of parking. An adult theater is an allowed use only in the M-I Manufacturing district. Due to First Amendment issues adult entertainment uses are special cases. *See City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47-49 (1986). Such a use must be allowed somewhere. It is difficult to argue that churches are treated unfairly compared to adult theaters, since there are presently 15 existent churches located in Hazel Crest, and apparently no more than one adult theater. The two uses are not comparable. The community centers are limited to governmentally owned institutions which are obviously not like churches.

The real problem facing Word Seed is not the Hazel Crest Zoning Ordinance, but the fact that apparently, there is no existing parcel of land in Hazel Crest that is of sufficient size to accommodate the 120-member church Word Seed contemplates. However, as the Supreme Court stated in *Renton* "[t]hat respondents must fend for themselves in the real estate market on an equal footing with other real estate purchasers . . . does not give rise to a [constitutional] violation." *Renton*, 475 U.S. at 54. Suppose, for example, that every parcel of real estate in Hazel Crest was owned by private persons and no one desired to sell, there would be no land available for Word Seed to purchase. Such a situation would obviously not give rise to any sort of constitutional deprivation. This seems to be the case in Hazel Crest. There is no suitable land available for creating a new church

of the size Word Seed has in mind. Word Seed's expert appears to agree that this is the current situation which obviously does not rise to be a constitutional violation. Hazel Crest is entitled to summary judgment on Count II.

### C. Vagueness

In Count VI Word Seed claims that the Hazel Crest zoning ordinance is unconstitutionally vague. This argument is not well fleshed out and seems to argue that there are no standards to govern the issuance of a special use, or that they are impermissibly vague. However, the Seventh Circuit has specifically upheld special use criteria very similar to Hazel Crest's. *Vision Church*, 468 at 990. The special use standards also stand up to the requirements of the Illinois supreme Court in *LaSalle National Bank v. County of Cook*, 12 Ill.2d 40, 46-47 (1957). Of course, a disgruntled religious body who is denied a special use or a rezoning can bring an action under RLIUPA as owner of a property that is being discriminated against. If all else fails an owner can seek court review of the municipal decision if it is violative of the state and/or federal constitution. Finally, after arguing vagueness, Word Seed spends considerable time arguing that the specific requirements for a special use are onerous. There is no basis for liability under Count VI, so summary judgment for Hazel Crest is granted.

### IV. CONCLUSION

For the reasons stated here, the Defendant's Motion for Summary Judgment is granted on all six counts.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/6/2022